## Richmond

### HARRY WILLIAM BROWN v. COMMONWEALTH OF VIRGINIA.

April 28, 1975.

Record No. 740515.

Present, All the Justices.

*John L. Gregory, III (R. Reid Young, Jr.; Young, Kiser, Haskins & Mann, Ltd.,* on brief), for plaintiff in error.

*Linwood T. Wells, Jr., Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

Cochran, J., delivered the opinion of the court.

Harry William Brown was tried by a jury which found him guilty of distributing heroin and fixed his punishment at confinement for five years in the State Penitentiary and payment of a $2,500 fine. To the judgment order entered on the verdict we granted Brown a writ of error limited to the question whether the trial court erred in granting Instruction 6,[1] which permitted the jury to find Brown guilty of a higher offense than accommodation distribution.

---

[1] Instruction 6 provides:

"THE COURT INSTRUCTS THE JURY that if you believe from the evidence beyond a reasonable doubt that on July 26, 1973, the defendant, Harry William Brown, did distribute a quantity of heroin to George Lincoln Hopkins, Jr., then you shall find the defendant guilty of distributing heroin, a Schedule I controlled substance, and shall fix his punishment at confinement in the penitentiary for not less than five years nor more than forty years, and by a fine of not more than $25,000.00."

Brown was charged with distribution of heroin to George Lincoln Hopkins, Jr., on July 26, 1973, in violation of Code § 54-524.101:1, as amended.[2] The 1973 amendment to the statute supplied the rebuttable presumption against accommodation distribution which we found lacking in *Jefferson* v. *Commonwealth*, 214 Va. 432, 435, 201 S.E.2d 749, 751 (1974). Indeed, Brown concedes that, under the statute as amended, had no evidence of accommodation distribution been introduced either by the Commonwealth or by Brown, the giving of Instruction 6 would have been proper. The Commonwealth concedes that, "language in § 54-524.101:1(a) to the contrary notwithstanding," evidence adduced by the Commonwealth which tended to rebut the presumption against accommodation distribution was as effective as if it had been presented by Brown. But these concessions are not dispositive where there is evidence as to the purpose of the distribution that is susceptible of different interpretations.

The principal witness against Brown was Hopkins, an admitted heroin addict. Hopkins' testimony was that on July 25, 1973, he had been in jail on another charge, and that shortly after 9:00 p.m. on that date he went to the Commonwealth Attorney's office and in the presence of the Commonwealth's Attorney, the Assistant Commonwealth's Attorney and Deputy Sheriff Earl Steele, made a telephone call to Brown at his residence. During the conversation, which was overheard on an extension telephone by Deputy Steele, Hopkins told Brown that he had been held in jail and needed some money for a lawyer, and Brown said, "Well I got something for you, let me make a few phone calls . . .", and arranged for Hopkins to call him back. In the later telephone conversation Brown assented that Hopkins could "come and get the stuff."

---

[2] Code § 54-524.101:1, as amended by Acts 1973, c. 479, provides in pertinent part as follows:

"(a) Any person who violates this section with respect to a controlled substance classified in Schedules I, II or III shall upon conviction be imprisoned for not less than five nor more than forty years and fined not more than twenty-five thousand dollars; provided, that if such person prove that he gave, distributed or possessed with intent to give or distribute a controlled substance classified in Schedule I or II other than marijuana only as an accommodation to another individual and not with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall upon conviction be imprisoned for not less than one nor more than ten years or, in the discretion of the jury or the court trying the case without a jury, by confinement in jail not exceeding twelve months and fined not more than one thousand dollars. . . ."

Deputy Steele and other law enforcement officers searched Hopkins and an automobile which he had borrowed. Shortly after midnight, Hopkins proceeded to Brown's residence and was admitted into the house. Hopkins testified that he remained inside for a few minutes during which time Brown told him that the heroin was "stashed" outside in a flower bed at the corner of the house. Hopkins, when asked by the Commonwealth's Attorney what Brown said he was "supposed to do as far as picking up this stuff," gave this answer:

"Just go out and uh pick it up and go on and sell it, *keep his money straight*." (Emphasis added.)

Hopkins testified that he left the house, picked up a cigarette box in Brown's flower bed and delivered it to the officers, and his testimony was corroborated by Deputy Steele. The box was found to contain 51 foil packages of heroin.

Brown relies heavily on Deputy Steele's testimony concerning Hopkins' first telephone conversation with Brown. Steele testified that in answer to Hopkins' request for money Brown replied, "I have something for you, I am going to *give it to you to help you out*." (Emphasis added.)

The jury could have found from Deputy Steele's testimony that Brown intended to make a gift of the heroin to Hopkins. Therefore, the trial court correctly gave an instruction to the jury that permitted a finding of accommodation distribution. We do not agree, however, with Brown's contention that, as a matter of law, the Commonwealth's evidence showed accommodation distribution.

The evidence is susceptible of another interpretation. The jury reasonably could have found that Brown used the word "give" in its less technical sense to mean "deliver" or "transfer possession of" the heroin to enable Hopkins to complete a pending commercial distribution. The evidence as to Brown's instructions to Hopkins to sell the heroin and keep Brown's "money straight," if believed, could lead to the reasonable inference that there was an intent on Brown's part to share in the profits derived from the anticipated sale by Hopkins. Therefore, it was peculiarly within the province of the jury to determine from the evidence whether the distribution to Hopkins was made by Brown, which Brown categorically denied, and, if so, whether it was made for profit or merely for Hopkins' accommodation.

We hold that the trial court did not err in giving Instruction 6, and Brown's conviction is, accordingly,

*Affirmed.*