## Richmond

REX ALLEN GARDNER v. COMMONWEALTH OF VIRGINIA.

June 11, 1976.

Record No. 750910.

Present, All the Justices.

*Alan D. Gillis* (*Gillis, Whitehurst & Obenshain*, on brief), for plaintiff in error.

*Alan Katz, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

Per Curiam.

Rex Allen Gardner was tried by a jury which found him guilty of distributing a controlled substance, Lysergic Acid Diethylamide (LSD), in violation of Code § 54-524.101:1[1] and fixed his punish-

[1] Code § 54-524.101:1, as amended by Acts 1973, c. 479, in effect at the time of the offense of which Gardner was convicted, provided in pertinent part as follows:

"(a) Any person who violates this section with respect to a controlled substance classified in Schedules I, II or III shall upon conviction be imprisoned for not less than five nor more than forty years and fined not more than twenty-five thousand dollars; provided, that if such person prove that he gave, distributed or possessed with intent to give or distribute a controlled substance classified in Schedule I or II other than marijuana only as an accommodation to another individual and not

ment at confinement for five years in the State Penitentiary and payment of a $1 fine. Judgment was entered on the verdict. We granted Gardner a writ of error limited to the question whether the trial court erred in refusing to grant an instruction which would have pemitted the jury to find Gardner guilty of an accommodation distribution.

On June 29, 1974, Gardner, while hitchhiking in Blacksburg, received a ride from Deputy Sheriff David L. Barnes and an informer, Darrel Adkins, who were working undercover for the Montgomery County Sheriff's Department in the enforcement of the narcotics laws. Barnes and Adkins asked Gardner if he had any marijuana which they could buy. Gardner replied that he had none but that if he could make a telephone call he might be able to locate some. After making the telephone call, Gardner guided Barnes and Adkins to the Propeller Club, a night spot in Montgomery County.

The evidence is conflicting as to the number of times Gardner entered the club. Nevertheless, it is uncontradicted that he finally returned to the car with one Thomas Dellinger, who informed Barnes that, although he had no marijuana, he had other drugs; that Barnes purchased from Dellinger seven tinfoil packages of LSD, for which he paid Dellinger with a marked $20 bill; and that Barnes then arrested Dellinger and Gardner for distribution of a controlled drug.

Barnes, the principal witness for the Commonwealth, conceded that Gardner never received any of the purchase money for the LSD and did not have any controlled drugs in his possession when the purchase was made. Dellinger, a defense witness, admitted that he made the LSD sale to Barnes, received from him all the proceeds, and expected to keep the money. Testifying in his own behalf, Gardner denied that he had any financial interest in the LSD or any expectation of sharing in the proceeds derived from its sale. His explanation of his participation in the transaction was that Barnes and Adkins persisted in their efforts to persuade him to find drugs for them until he decided to "help them out" by arranging for them to meet Dellinger. The record reveals that Gardner was nineteen years of age, while Barnes and Adkins were in their thirties.

---

with intent to profit thereby nor to induce the recipient or intended recipient of the controlled substance to use or become addicted to or dependent upon such controlled substance, he shall upon conviction be imprisoned for not less than one nor more than ten years or, in the discretion of the jury or the court trying the case without a jury, by confinement in jail not exceeding twelve months and fined not more than one thousand dollars. . . ."

Gardner tendered an accommodation instruction[2] which the trial court refused to grant on the ground that there was no evidence to support it. We disagree with this ruling of the trial court.

The 1973 amendment to Code § 54-524.101:1 supplied the rebuttable presumption against an accommodation distribution which, in *Jefferson* v. *Commonwealth*, 214 Va. 432, 201 S.E.2d 749 (1974), we had found to be lacking in the statute. *Brown* v. *Commonwealth*, 215 Va. 753, 213 S.E.2d 764 (1975). The Attorney General contends, therefore, that in the present case Gardner, in order to be entitled to an accommodation instruction, was required to show not only that he did not intend to profit from the sale but also that he did not intend to induce the recipient to use or to become addicted to or dependent upon the controlled substance. While Gardner does not challenge this contention as to the applicable law, he maintains, with justification, that the evidence amply supported the proffered instruction.

Gardner was entitled to an instruction based upon evidence which, if believed, was sufficient to show that he had no intent to share in the sale proceeds or otherwise profit from the transaction, or to induce Barnes or Adkins to use or become addicted to or dependent upon the LSD. There was evidence that the sale of LSD was consummated only by Dellinger, and that Gardner neither received nor expected to receive any of the purchase money. Moreover, Gardner's testimony, supported in material respects by the testimony of Barnes, was that the effort to purchase drugs was prompted by Barnes and Adkins, who sought to convince Gardner that they were experienced users of narcotics, thus negating any inference that Gardner intended to induce them, *i.e.*, persuade or influence them, to use or to become addicted to or dependent on the drugs which they pressed Gardner to find for them.

The trial court gave an instruction defining principals in the first degree as the actual or immediate perpetrators of the crime, and principals in the second degree as those present, aiding and abetting in its commission, and further informing the jury that principals in the second degree are subject to the same punishment as principals in the first degree. By refusing the accommodation instruction, how-

---

2 "Instruction C

"The Court instructs the jury that if you find from the evidence introduced that Rex Allen Gardner did distribute lysergic acid diethylamide, a scheduled one drug, and only as an accommodation to D. L. Barnes and not with an intent to profit thereby nor to induce the recipient to use or become addicted to or dependent upon such controlled substance, then you shall find him guilty and fix his punishment at not less than one (1) nor more than ten (10) years or confinement in jail not exceeding twelve (12) months and a fine of not more than $1,000."

ever, the court restricted the jury to three alternative findings. They could find Gardner guilty as a principal in the first degree, guilty as a principal in the second degree, or not guilty. Thus, the trial court, in effect, treated the evidence of accommodation distribution as evidence only of aiding and abetting in the distribution for profit.

The trial court's ruling cannot be reconciled with the legislative intent implicit in the statute by which the General Assembly established two clearly defined gradations of controlled drug distribution offenses. Distribution with the intent to profit or to induce use, addiction or dependency is punishable within substantially higher minimum and maximum limits than is accommodation distribution. In the present case there was evidence which, if believed, would have permitted the jury to find Gardner guilty as an accommodation distributor and to fix his punishment within the range of penalties applicable to such offenders. Gardner was entitled to have this alternative finding made available to the jury.

Accordingly, the judgment of the trial court is reversed and the case is remanded for a new trial.

*Reversed and remanded.*